2001 ME 122

**TOWN OF WELLS**

v.

**TOWN OF OGUNQUIT et al.**

Supreme Judicial Court of Maine.

Argued June 12, 2001.
Decided July 25, 2001.

Durward W. Parkinson (orally), Susan Bernstein Driscoll, Bergen & Parkinson, L.L.C., Kennebunk, for plaintiff.

Sidney St. F. Thaxter, Charles J. Micoleau (orally), Justin D. LeBlanc, Curtis Thaxter Stevens Broder & Micoleau, L.L.C., Portland, for defendant Town of Ogunquit.

G. Steven Rowe, Attorney General, Sarah A. Forster, Asst. Attorney General (orally), William H. Laubenstein III, Asst. Attorney General, Augusta, for defendant State of Maine.

Deirdre M. Smith (orally), Richard A. Spencer, Durmmond Woodsum & MacMahon, Portland, for intervenor Wells–Ogunquit Community School District.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] The Town of Wells appeals from the summary judgment entered in the Superior Court (York County, *Fritzsche, J.*) declaring that a private law which revises the funding formula for the Wells–Ogunquit Community School District, P. & S.L. 1999, ch. 83, does not violate the unfunded mandate provision of the Maine Constitution, ME. CONST. art. IX, § 21. The Town of Ogunquit cross-appeals arguing that Wells lacks standing and that the action is barred by the enrolled bill doctrine. The State of Maine appears as a party to defend the constitutionality of the law. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Ogunquit was once part of Wells. When Ogunquit was authorized to separate from Wells, the voters of both towns approved the creation of a community school district for the two towns and authorized the funding of the school district based upon each town's state valuation. Specifically, the funding formula was as follows: "One hundred percent of the total will be assessed between the towns in the same proportion as the state valuation of each town for the year preceding that year to which the budget applies bears to the total for both towns." P. & S.L. 1979, ch. 45, § 6.

[¶ 3] The funding formula for the school district was amended by P. & S.L. 1999, ch. 83. The new formula results in a greater funding obligation for Wells. Now, only a portion of the school district's funding is allocated according to the respective state valuations of each town. The remainder of the district's funding is met by an assessment based on the average number of students of each town who are educated at public expense. Specifically, for the fiscal year 2000–01, 88.9% of the school district's expenses are met by using the state valuations. P. & S.L. 1999, ch. 83, § 1(1). That percentage is to decrease each year for the next two years. For fiscal year 2001–02, the percentage of the district's expenses that is to be met by the state valuations is 77.8, *id.* at § 1(2), and for the following fiscal year, that percentage decreases to 66.7, *id.* at § 1(3). Because Wells has more pupils attending school than Ogunquit, the formula change means that Wells' proportion of the school district expense will increase while Ogunquit's share will decrease.

[¶ 4] The officials of Wells aver that if the school district's expenses remain as budgeted Wells will pay approximately $338,000 more in fiscal year 2000–01 under the new formula than it would have had to pay under the original formula. The officials allege that Wells has had to increase its tax rate to meet its obligations under the revised funding formula.

[¶ 5] Wells filed an action in Superior Court seeking a declaration that statutory revision of the school district funding formula violates the constitutional amendment against unfunded mandates. ME. CONST. art. IX, § 21. The Superior

Court rejected Ogunquit's challenge to Wells' standing to raise the constitutional issue.[1] Ogunquit also claimed the court action was an impermissible challenge to the manner in which legislation was enacted, and the court rejected that claim as well.[2] Reaching the merits of Wells' contention that the revised funding formula violates the constitutional prohibition against unfunded mandates, the Superior Court concluded that the new funding formula does not require Wells to expand or modify its activities, and, therefore, the revised formula does not run afoul of the constitutional provision.

## II. THE CONSTITUTIONAL AMENDMENT PROHIBITING UNFUNDED MANDATES

[¶ 6] The constitutional provision at issue, ME. CONST. art. IX, § 21, provides as follows:

> For the purpose of more fairly apportioning the cost of government and providing local property tax relief, the State may not require a local unit of government to expand or modify that unit's activities so as to necessitate additional expenditures from local revenues unless the State provides annually 90% of the funding for these expenditures from State funds not previously appropriated to that local unit of government. Legislation implementing this section or requiring a specific expenditure as an exception to this requirement may be enacted upon the vote of ⅔ of all members elected to each House. This section must be liberally construed.

█ [¶ 7] For purposes of this case, the key words of the amendment are: "[T]he State may not require a local unit of government to expand or modify that unit's activities so as to necessitate additional expenditures from local revenues ...." Although the remainder of the amendment is equally important, its requirements do not come into play until this first portion of the amendment is met. Unless the State has done something to require Wells to expand or modify its activities so that Wells has to spend more local money for that expansion or modification, the remainder of the amendment is not relevant. Thus, we must determine whether the revised funding formula requires Wells to expand or modify its activities so that it has to expend more local revenue for that expansion or modification.

[¶ 8] Wells argues that by changing the funding formula the State is requiring it to modify its activities. It contends that increasing its tax rate is a modification of its activities. We disagree. The State has not required Wells to expand or modify its activities. It is not being required to build a new transportation system or provide computers to all of its residents. It is not being required to expand or modify the educational program of the school district. It does not have to hire more teachers or provide new courses. Presumably such requirements would be expansions that would necessitate the town to expend additional revenues.

---

1. We will not belabor the standing issue. In a nutshell. Ogunquit claims that Wells has no standing because section 21 of Article IX of the Maine Constitution does not grant municipalities an entitlement to be free from unfunded mandates. We do not agree. Wells, as a unit of local government directly affected by a legislative enactment, has standing to challenge the constitutionality of that amendment.

2. Both Ogunquit and the State argue that Wells' action is barred by the enrolled bill doctrine. Under the "enrolled bill rule" an enrolled act cannot be impeached by the showing of any irregularity in its passage. *Weeks v. Smith*, 81 Me. 538, 547, 18 A. 325, 327 (1889). For reasons discussed below, we do not reach this issue.

[¶ 9] The harsh reality is that Wells' portion of the funding formula has been increased, and Wells will have to spend more money if the school budget remains as is. The reality also is that Wells controls the votes on the board of the school district. P. & S.L. 1985, ch. 93. Wells, not the State, controls the expenditures of the school district.

[¶ 10] The State has not required Wells to raise taxes, and the State has not required Wells to expand or modify its activities. The revised funding formula for the school district does not violate section 21 of Article IX of the Maine Constitution.

[¶ 11] Because the State has not required any action on the part of Wells that mandates an expansion or modification of its activities, the first portion of the constitutional amendment is not implicated. The remainder of the provision, therefore, is not relevant to this controversy. For that reason, we do not reach the issue of whether we can consider the manner in which the Legislature enacted the revised funding formula. Whether it was enacted by a simple majority or by two-thirds of all members carries no significance.

The entry is:

Judgment affirmed.